UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EVEROD REID,<br><br>                Petitioner,<br><br>         -v.-<br><br>DIRECTOR THOMAS DECKER, *as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement*, DIRECTOR JAMES McHENRY, *as Director of the Executive Office for Immigration Review*, ACTING SECRETARY KEVIN K. McALEENAN, *as Acting Secretary, U.S. Department of Homeland Security*, and ATTORNEY GENERAL WILLIAM BARR, *as Attorney General, U.S. Department of Justice*,<br><br>                Respondents. | 19 Civ. 8393 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Petitioner Everod Reid brings this petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the United States Constitution, challenging his prolonged detention without a bond hearing by federal immigration authorities. Reid's Petition seeks a writ ordering Respondents to, within seven days of the Court's order, release Reid on his own recognizance or provide him with an individualized hearing before a neutral arbitrator. Respondents Thomas Decker, James McHenry, Kevin McAleenan, and William Barr (together, the "Government"), oppose Reid's requested relief. For the reasons explains below, Reid's Petition is granted in part.

## A.    Factual Background

Petitioner Reid is a 49-year-old Legal Permanent Resident ("LPR") from Jamaica who has lived in the United States for nearly 35 years. (Pet. ¶ 21). He entered the United States as an LPR at Miami, Florida, on or about August 17, 1985, at the age of 15. (Samuel Decl. ¶ 4). Before being detained, Reid lived with his fiancée and 10-year-old daughter on Long Island. (Pet. ¶ 21).

Reid's Petition proceeds from an especially complicated procedural history that merits discussion. To begin, Reid has three criminal cases that have resulted in convictions during his time in the United States: (i) a 1995 guilty plea to three counts of sale of stolen firearms, in violation of 18 U.S.C. § 922(j); (ii) a 2000 guilty plea to possession of a controlled substance with intent to distribute, in violation of N.J.S.A. § 2C:35-5(a)(1)-(b)(1); and (iii) a 2019 guilty plea to criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1). (Pet. ¶ 23).

On August 17, 1995, Reid was convicted, in the United States District Court for the Northern District of New York, of the offense of sale of stolen firearms, in violation of 18 U.S.C. § 922(j). (Samuel Decl. ¶ 5). Reid was

---

[1]    This opinion draws on facts alleged in the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet." (Dkt. #1)); the Declaration of Deportation Officer Kevin Samuel ("Samuel Decl." (Dkt. #14)); and the Declaration of Daniel Cicchini ("Cicchini Decl." (Dkt. #15)).

For ease of reference, the Court refers to the parties' briefing as follows: Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus as "Gov't Br." (Dkt. #16); and Petitioner's Reply in Support of the Petition for Habeas Corpus as "Pet. Reply" (Dkt. #21).

sentenced principally to 18 months' imprisonment. (*Id.*). While Reid was serving his criminal sentence, the former Immigration and Naturalization Service ("INS") served Reid with an Order to Show Cause ("OSC") charging him as deportable under former Immigration and Nationality Act ("INA") § 241(a)(2)(A)(iii), as an alien who at any time after entry had been convicted of an offense involving a firearm. (*Id.* at ¶ 6). INS served the OSC on the Oakdale Immigration Court in Oakdale, Louisiana, on December 29, 1995, thereby commencing deportation proceedings against Reid. (*Id.*).

On January 19, 1996, while Reid was still in criminal custody serving his sentence, an Immigration Judge ("IJ") conducted a bond hearing in Reid's immigration case and granted him release on a $7,000 bond. (Samuel Decl. ¶ 7). Upon his release from criminal custody on or about January 22, 1996, INS detained Reid pending the outcome of his deportation proceedings. (*Id.*). Reid subsequently posted the bond set by the IJ, and he was released by INS on February 6, 1996. (*Id.*).

On February 7, 1996, Reid's immigration case was transferred to the non-detained docket of the Immigration Court in New York. (Samuel Decl. ¶ 8). On March 14, 1997, Reid applied for a waiver of deportation under former INA § 212(c) and adjustment of status under INA § 245. (*Id.* at ¶ 10; Pet. ¶ 24). On that same date, the IJ found Reid ineligible for a § 212(c) waiver. (Samuel Decl. ¶ 10; Pet. ¶ 24). However, on April 17, 1997, Reid's petition for adjustment of status as an alien relative ("I-130 petition") was approved. (Samuel Decl. ¶ 11; Pet. ¶ 24).

Reid then had his second encounter with the criminal justice system. On October 2, 1998, Reid was arrested by the New York and New Jersey Port Authority Police Department and charged with possession of a controlled substance with intent to distribute. (Samuel Decl. ¶ 12). Reid pleaded guilty to the distribution charge in New Jersey state court in 2000. (Pet. ¶ 23). On February 10, 2000, Reid was sentenced principally to ten years' imprisonment. (Samuel Decl. ¶ 12). The New Jersey State Parole Board later granted Reid parole in October 2002. (*Id.*). Reid's deportation proceedings were administratively closed while he was incarcerated. (*Id.* at ¶ 13).

On October 8, 2002, upon his release from criminal custody, INS arrested Reid and detained him pending the resumption of his deportation proceedings. (Samuel Decl. ¶ 14). On or about October 15, 2002, INS filed a motion to re-calendar Reid's deportation proceedings. (*Id.* at ¶ 15). On November 15, 2002, an IJ at the Newark Immigration Court conducted a bond hearing in Reid's case pursuant to the decision of the Third Circuit Court of Appeals in *Patel* v. *Zemski*, 275 F.3d 299 (3d Cir. 2001). (*Id.* at ¶ 16). The IJ granted Reid release on a $20,000 bond. (*Id.*). On November 19, 2002, Reid was released by INS after posting the $20,000 bond. (*Id.*).

On April 26, 2004, Reid renewed his application for § 212(c) relief and sought an adjustment of status. (*See* Samuel Decl. ¶ 17). The IJ concluded that Reid was ineligible for a § 212(c) waiver and ordered him removed from the United States to Jamaica. (*Id.*). On July 26, 2004, Reid filed a motion to reopen his deportation proceedings, along with a motion to reconsider the

denial of the § 212(c) waiver. (*Id.* at ¶ 18). INS's successor agency, the Bureau of Immigration and Customs Enforcement ("ICE"), filed an opposition to the motion on August 9, 2004, and Reid filed a reply on August 26, 2004. (*Id.*). On September 26, 2004, the IJ denied the motions to reopen and to reconsider. (*Id.*). On October 26, 2004, Reid filed a notice of appeal from the IJ's decision denying his motion to reopen with the BIA. (*Id.* at ¶ 19). On May 5, 2005, the BIA affirmed the IJ's decision and dismissed Reid's appeal. (*Id.*).

On February 2, 2005, ICE arrested Reid for the purpose of executing his order of deportation. (Samuel Decl. ¶ 20). On May 9, 2005, Reid filed a petition for a Writ of Habeas Corpus challenging the lawfulness of his deportation order in the United States District Court for the Eastern District of New York. (*Id.* at ¶ 21). The District Court transferred the petition to the Third Circuit. (*Id.*). On June 15, 2005, Reid filed a motion for a stay of removal with the Third Circuit. (*Id.* at ¶ 22). The Third Circuit granted the motion on a temporary basis, but then vacated its order and denied Reid's motion for a stay of removal on August 8, 2005. (*Id.*). On November 17, 2005, Reid was removed from the United States to Jamaica. (*Id.* at ¶ 23).

On April 25, 2006, the Third Circuit granted Reid's petition for review after concluding that Reid was in fact eligible for § 212(c) relief and remanded his case back to the BIA. *Reid* v. *Attorney General of U.S.*, 177 F. App'x 216 (3d Cir. 2006) (summary order). (Samuel Decl. ¶ 24). On December 7, 2006, the BIA remanded Reid's case to the IJ. (*Id.* at ¶ 25). On June 27, 2007, the IJ held a hearing on Reid's § 212(c) application. (*Id.* at ¶ 26). At the hearing, ICE

filed additional charges of deportability based on Reid's 2000 controlled substance conviction in New Jersey, along with a motion to pretermit his § 212(c) application. (*Id.*). The IJ adjourned the case to September 13, 2007, for a decision on ICE's motion. (*Id.*).

On September 11, 2007, the IJ issued an order granting ICE's motion to pretermit Reid's § 212(c) application, and ordered Reid removed from the United States to Jamaica. (Samuel Decl. ¶ 28). On October 11, 2007, Reid filed an appeal from the IJ's decision. (*Id.* at ¶ 29). On June 13, 2009, the BIA remanded the record back to the IJ because there was an issue with the audio recording of the June 27, 2007 hearing such that it could not be transcribed. (*Id.* at ¶ 30). On April 15, 2010, after several adjournments, an IJ held a hearing in Reid's deportation proceedings at which the parties agreed that the matter could be addressed by the BIA based on the written submissions of the parties. (*Id.* at ¶ 34). The record was then certified back to the BIA. (*Id.*). Around this time Reid reentered the United States. (*Id.* at ¶ 33).

On October 24, 2011, the BIA again remanded the record back to the IJ, concluding that the IJ had erred in pretermitting Reid's § 212(c) application. (Samuel Decl. ¶ 35; Dkt. #13, Ex. 10 ("2011 BIA Decision")). The BIA concluded that, because Reid's deportation proceedings had commenced in December 1995 — pre-dating both statutory amendments and the repeal of § 212(c) — "§ 212(c) relief remains available to him." (2011 BIA Decision). The BIA rejected the IJ's reliance on a footnote in the Third Circuit's 2006 decision, stating "we know of no authority to support the conclusion that lodging an

additional charge of deportability in [Reid]'s deportation proceedings instituted prior to April 24, 1996, precludes him from section 212(c) relief." (*Id.*). Thus, the BIA concluded that Reid "is not ineligible for a section 212(c) waiver as a result of the date of his 2000 conviction," but noted that the IJ's "decision does not address whether [Reid]'s 2000 conviction renders him ineligible for section 212(c) relief for any other reason than the date of the conviction." (*Id.*). The BIA, without expressing an opinion on the merits of the claim, remanded the record to the IJ "for consideration of [Reid]'s possible eligibility for a section 212(c) waiver and adjustment of status." (*Id.*).

On January 11, 2012, Reid appeared with his counsel before an IJ for his remanded deportation proceedings. (Samuel Decl. ¶ 36). Reid requested that his immigration case be transferred from the Newark Immigration Court to the Immigration Court in New York. (*Id.*). ICE opposed transfer due to the Third Circuit's decision in Reid's case, and the IJ agreed with ICE and declined to transfer the case. (*Id.*). The IJ adjourned the case to September 9, 2013, for a hearing on the merits of Reid's § 212(c) application. (*Id.*). Reid's merits hearing was rescheduled several times between September 2013 and April 2018. (Cicchini Decl. ¶ 6). Because Reid was not detained by ICE during this period, his case remained on the non-detained docket. (*See id.*).

On April 10, 2018, Reid appeared with counsel before an IJ in the Newark Immigration Court for a hearing in his case. (Samuel Decl. ¶ 38). At that time, Reid's counsel requested that his case be transferred to the New York Immigration Court (non-detained docket), located in New York City,

because it was closer to where Reid was living. (*Id.*). This time, the IJ granted Reid's request to transfer the case to the Immigration Court in New York City. (*Id.*).

A few months later, Reid had his third contact with the criminal justice system. On August 3, 2018, Reid was arrested by the New York City Police Department and charged with, *inter alia*, criminal possession of a controlled substance in the third degree. (Samuel Decl. ¶ 39). On August 16, 2018, Reid was arrested by immigration authorities and placed in civil immigration detention in a county jail. (Pet. ¶ 2). On September 12, 2018, counsel for Reid appeared for a hearing before an IJ on the non-detained docket in New York. ICE served evidence of Reid's criminal history and asked that the IJ transfer the case to the detained docket in New York. (Samuel Decl. ¶ 42). The IJ granted that request and transferred the case to the detained docket of the Immigration Court on Varick Street in Manhattan. (*Id.*).

On November 26, 2018, Reid was turned over to local authorities in New York County due to his pending criminal case. (Samuel Decl. ¶ 44). On March 26, 2019, Reid pleaded guilty in New York State Supreme Court to criminal possession of a controlled substance in the third degree. (*Id.* at ¶ 39). The same day he was sentenced principally to nine months' imprisonment. (*Id.*). Reid served his sentence at Rikers Island and was sent back to ICE detention at the Hudson County Correctional Center on or about April 29, 2019, where he has remained ever since. (*Id.* at ¶ 47; Pet. ¶ 2).

On July 18, 2019, the Brooklyn Defender Services, New York Immigrant Family Unity Project, appeared for the first time on Reid's immigration case. (Pet. ¶ 25). Reid appeared over video teleconference from the Hudson County Correctional Center. (*Id.*). Counsel for Reid requested a competency hearing pursuant to *Matter of M-A-M-*, 25 I & N Dec. 474 (BIA 2011), based on concerns about Reid's mental capacity. (*Id.*).[2] ICE did not oppose a *Matter of M-A-M-* hearing. (*Id.*). The IJ scheduled the hearing for September 10, 2019. (*Id.*).

On September 10, 2019, Reid was produced in person at Immigration Court on Varick Street for his competency hearing pursuant to a court order. (Pet. ¶ 26). Reid appeared in court in a jumpsuit and shackles around his waist and wrists. (*Id.*). At the hearing, Dr. Karen Cort, a psychologist, testified about Reid's cognitive and mental health and explained that she found Reid incompetent. (*Id.*). After hearing testimony, the IJ declined to make a formal ruling on competency, deferring the matter pending receipt of additional medical records. (*Id.*). However, the IJ expressed concern about Reid's mental health, and stated that she would be implementing various safeguards in his case. (*Id.*).

At that conference, ICE requested that the case be set for another conference so that it could file additional charging documents based on Reid's 2019 guilty plea and medical records from Hudson County Correctional Center. (Pet. ¶ 26). The case was reset for October 18, 2019. (*Id.*). At the October 18,

---

[2] According to the record in this case, Reid has been diagnosed with schizophrenia. (Pet. ¶ 22).

2019 hearing, the IJ discussed the remaining issues that needed to be resolved prior to a merits hearings on Reid's case. (Cicchini Decl. ¶ 18). The IJ set deadlines for ICE's submission and Reid's response and discussed safeguards that would be implemented at the merits hearing in light of concerns about Reid's competency. (*Id.*; *see also* Pet. ¶ 26).

The IJ held the merits hearing on November 22, 2019. (Dkt. #22). At the hearing, Reid sought relief of adjustment of status with a § 212(c) waiver and Convention Against Torture ("CAT") deferral. (Dkt. #25-1 ("2020 IJ Decision") at 3). The IJ gave the parties until December 6, 2019, to file written closing briefs and said she would hold the decision over to December 27, 2019. (Dkt. #22). On January 31, 2020, the IJ denied Reid's application for relief from removal and ordered him removed to Jamaica. (2020 IJ Decision).

In her decision, the IJ concluded that Reid had not met his burden of demonstrating that his application merited a favorable exercise of § 212(c) discretion. (2020 IJ Decision at 7). The IJ explained that, in deciding whether an alien is entitled to an INA § 212(c) waiver, it must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented on his behalf in order to determine whether the granting of the waiver appears in the best interest of the country. (*Id.*). On the positive side, the IJ considered, *inter alia*, Reid's strong family ties, his elderly mother's and fiancée's illnesses, and his own mental health issues. (*Id.* at 9). These factors did not, in the IJ's estimation, outweigh the extensive adverse information in the record, including the fact that Reid's

criminal record spanned over 20 years, and his March 2019 conviction for criminal possession of oxycodone, which bespoke a lack of rehabilitation. (*Id.* at 8-9). Accordingly, the IJ denied Reid's application for a § 212(c) waiver and adjustment of status, concluding that a grant of relief was not in the best interests of the country. (*Id.* at 9). The IJ also denied Reid's application for deferral of removal under CAT, concluding that Reid had not met the high burden of establishing it is more likely than not he would be subjected to torture if removed to Jamaica. (*Id.* at 10-11).

On or about February 12, 2020, Reid filed a timely appeal of the IJ's decision to the BIA. (Dkt. #26, 27).

**B.    Procedural Background**

On September 10, 2019, Reid filed a habeas petition under 28 U.S.C. § 2241 in this Court challenging his current immigration detention as unlawful and seeking an order requiring ICE to immediately release him or provide him with a bond hearing. (*See generally* Pet.). The Petition asserts two causes of action: *first*, that 8 U.S.C. § 1226(c) is unconstitutional as applied to any individual who is detained for more than six months (i.e., mandatory detention beyond six months violates due process) (*id.* at ¶¶ 45-47); and *second*, that "arbitrary application of 8 U.S.C. § 1226(c) as applied to petitioner is a violation of the Due Process Clause of the Fifth Amendment" (*id.* at ¶¶ 48-50). On October 21, 2019, the Government filed an opposition to the relief sought in the Petition. (Dkt. #13, 14, 15, 16). Reid filed a reply brief on November 1, 2019. (Dkt. #21).

On January 28, 2020, while his Petition was pending, Reid moved for a Court order releasing him immediately. (Dkt. #23). The Government opposed this motion in a brief filed on January 30, 2020. (Dkt. #24). On February 4, 2020, the Government notified the Court that the IJ had denied Reid's application for relief and ordered him removed. (Dkt. #25). The Government advised the Court on February 18, 2020, that he had filed an appeal from his order of removal to the BIA, which meant that the removal order was not yet final, and, therefore, that Reid's detention remained governed by 8 U.S.C. § 1226(c). (Dkt. #26). On February 19, 2020, Reid filed a letter updating the Court on Reid's fiancée's health and noting that Reid had by that point been detained for 381 days. (Dkt. #27). On February 28, 2020, Reid filed a letter updating the Court that his fiancée had passed away. (Dkt. #28). On February 28, 2020, the Government responded to Reid's letter of the same date, explaining that Reid had been transported to the hospital on February 26, 2020 to visit his fiancée. (Dkt. #29).

## DISCUSSION

### A.  Jurisdiction over Habeas Petitions

The general habeas corpus statute, set forth at 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang* v. *Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention.

*Demore* v. *Kim*, 538 U.S. 510, 516-17 (2003).  The Government does not

dispute jurisdiction in this case, and it exists under 28 U.S.C. §§ 2241 (habeas)

and 1331 (federal question).

**B.      Detention Pursuant to 8 U.S.C. § 1226(c)**

There is no dispute "that the Fifth Amendment entitles aliens to due

process of law in deportation proceedings." *Demore*, 538 U.S. at 523; *see Reno*

v. *Flores*, 507 U.S. 292, 306 (1993).  It is equally undisputed that "[f]reedom

from imprisonment — from government custody, detention, or other forms of

physical restraint — lies at the heart of the liberty that [the Fifth Amendment's

Due Process] Clause protects." *Zadvydas* v. *Davis*, 533 U.S. 678, 690 (2001).

As such, "[i]ndefinite detention in connection with removal proceedings without

an opportunity for a bail hearing, where there is no possibility of actual

removal, violates the due process rights of the detained alien." *Debel* v. *DuBois*,

No. 13 Civ. 6028 (LTS) (JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014)

(citing cases).  Nonetheless, under certain circumstances, the Supreme Court

"has recognized detention during deportation proceedings as a constitutionally

valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

Under federal immigration law, the Department of Homeland Security is

authorized to arrest and detain an alien who has entered the United States but

is believed to be removable.  8 U.S.C. § 1226(a); *Lora* v. *Shanahan*, 804 F.3d

601, 608-09 (2d Cir. 2015), *vacated on other grounds sub nom. Shanahan* v.

*Lora*, 138 S. Ct. 1260 (2018).  The alien may be detained "pending a decision

on whether the alien is to be removed," or federal officials may choose to

release the alien on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2). Even if officials decide to detain the alien, "an IJ can ordinarily conduct a bail hearing to decide whether the alien should be released or imprisoned while proceedings are pending." *Lora*, 804 F.3d at 608. Under § 1226(c), however, certain classes of aliens are subject to mandatory detention and may not, under the statute, be released on bond. *Jennings* v. *Rodriguez*, 138 S. Ct. 830, 837-38 (2018) (citing 8 U.S.C. § 1226(c)). Broadly speaking, aliens subject to mandatory detention include those who have committed certain "crimes involving moral turpitude" as defined by statute, controlled substance offenses, aggravated felonies, firearm offenses, or terrorist activities. *See* 8 U.S.C. § 1226(c)(1)(A)-(D).

In *Demore*, an LPR who had been convicted of two crimes involving moral turpitude and conceded his removability brought a facial constitutional challenge to § 1226(c). 538 U.S. at 513-14. The district court found the statute facially unconstitutional and the Ninth Circuit narrowed that holding as applicable only to LPRs. *See Kim* v. *Ziglar*, 276 F.3d 523, 527-28 (9th Cir. 2002). On appeal, the Supreme Court reversed, holding that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513. By "persons such as respondent," the Court specified that it referred to "a criminal alien who has conceded that he is deportable." *Id.* at 531. The "brief

period" envisioned by the Court "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.

*Demore* discussed and distinguished *Zadvydas*, a prior Supreme Court decision on the constitutionality of immigration detention. *Zadvydas* had dealt not with § 1226(c) detention during removal proceedings, but with 8 U.S.C. § 1231, which allows the Government to detain a noncitizen without bond beyond the 90 days following a final order of removal if done for the purpose of facilitating removal from the United States. 533 U.S. 682. The *Zadvydas* petitioners had been ordered removed, but when no other country would accept them, the Government interpreted § 1231 to authorize their indefinite detention. *Id.* at 684-87. To avoid the serious Due Process Clause concerns raised by that interpretation, the *Zadvydas* Court construed the statute to contain an implicit six-month limit to detention without bond for a noncitizen under a final order of removal whose actual removal is not reasonably foreseeable. *Id.* at 690, 701.

The *Zadvydas* holding rested on the premise that when "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690). Unlike the indefinite § 1231 detention in *Zadvydas* — which could no longer facilitate the petitioners' actual removal — the limited § 1226(c) detention pending removal proceedings in *Demore* was found to be facially constitutional because it was reasonably

related to its purpose, *viz.*, "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528.

While the *Demore* majority opinion upheld the constitutionality of § 1226(c) both facially and as applied to the respondent, Justice Kennedy's concurrence briefly addressed the circumstances under which that conclusion could change:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified .... Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

*Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). Thus, under Justice Kennedy's analysis, when detention under § 1226(c) is unreasonable or unjustified, a bond hearing is required. One indicator of unreasonable detention is unreasonable delay by the Government in pursuing and completing removal proceedings.[3]

---

[3]    Since *Demore*, several judges in this District have concluded that mandatory detention beyond six months to a year violates the Due Process Clause of the Constitution. *See, e.g., Faure* v. *Decker*, No. 15 Civ. 5128 (JGK), 2015 WL 6143801, at *2-4 (S.D.N.Y. Oct. 19, 2015); *Minto* v. *Decker*, 108 F. Supp. 3d 189, 195-96 (S.D.N.Y. 2015); *Gordon* v. *Shanahan*, No. 15 Civ. 261 (JGK), 2015 WL 1176706, at *3-5 (S.D.N.Y. Mar. 13, 2015).

Building on these two decisions, the Second Circuit in 2015 decided *Lora*

v. *Shanahan*, 804 F.3d 601 (2d Cir. 2015), in which it held that "in order to

avoid the constitutional concerns raised by indefinite detention, an immigrant

detained pursuant to section 1226(c) must be afforded a bail hearing before an

immigration judge within six months of his or her detention." *Id.* at 616. The

Second Circuit interpreted *Zadvydas* as "the Supreme Court signal[ing] its

concerns about the constitutionality of a statutory scheme that ostensibly

authorized indefinite detention of non-citizens." *Id.* at 613. And it described

the Supreme Court's decision in *Demore* as "emphasiz[ing] that, for detention

under the statute to be reasonable, it must be for a brief period of time." *Id.* at

614.

The Second Circuit found further support for its conclusion in Justice

Kennedy's concurrence in *Demore*, in which he reasoned that "[w]ere there to

be an unreasonable delay by the INS in pursuing and completing deportation

proceedings, it could become necessary then to inquire whether the detention

is not to facilitate deportation, or protect against risk of flight or

dangerousness, but to incarcerate for other reasons." *Lora*, 804 F.3d at 614

(alteration in original) (quoting *Demore*, 538 U.S. at 532-33 (Kennedy, J.,

concurring)). The Second Circuit concluded that *Zadvydas* and *Demore*, taken

together, "clearly establish that mandatory detention under section 1226(c) is

permissible, but that there must be some procedural safeguard in place for

immigrants detained for months without a hearing." *Id.* As a result, the

Second Circuit employed the canon of constitutional avoidance to read "an

implicit temporal limitation" in the statute. *Id.* The Ninth Circuit similarly adopted a six-month bright line rule for detention pursuant to § 1226(c). *See Rodriguez* v. *Robbins*, 715 F.3d 1127, 1132-33 (9th Cir. 2013).

*Lora*'s resolution was short-lived. In *Jennings* v. *Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court concluded that the Ninth Circuit had erred in applying the canon of constitutional avoidance to § 1226(c), and it reversed the Ninth Circuit's bright-line rule. Holding that § 1226(c) unambiguously mandated detention for certain classes of individuals, the Court distinguished *Zadvydas* as having concerned a statute that was ambiguous, thus triggering the application of the constitutional-avoidance canon. *Jennings*, 138 S. Ct. at 843-46. The Court vacated the Ninth Circuit's decision and remanded the case "to consider respondents' constitutional arguments on their merits." *Id.* at 851. Because the *Lora* decision had also relied upon the *Zadvydas* constitutional avoidance analysis, the Supreme Court vacated *Lora* after *Jennings* was issued. *Shanahan* v. *Lora*, 138 S. Ct. 1260 (2018). On remand, the Second Circuit dismissed the case as moot because Lora had been granted cancellation of removal. *Lora* v. *Shanahan*, 719 F. App'x 79, 80 (2d Cir. 2018) (summary order).

Since then, many courts within this Circuit have examined the extent to which other aspects of the *Lora* analysis remain good law. In the first of those opinions, *Sajous* v. *Decker*, No. 18 Civ. 2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018), a sister court concluded that "the reasoning of *Lora* remains strong persuasive authority," though not binding. *Id.* at *7. Judge Nathan

reasoned that, irrespective of *Lora*, it remains clear under Justice Kennedy's concurrence in *Demore*, as well as a wealth of other precedent, that "prolonged mandatory detention under § 1226(c), under certain circumstances ..., can become unreasonable such that an alien is entitled to an individualized determination as to his risk of flight and dangerousness." *Id.* at *9 (quoting *Demore*, 538 U.S. at 532 (Kennedy, J., concurring)). After concluding that a bright-line six-month rule was not constitutionally mandated, Judge Nathan applied a circumstance-specific approach to conclude that Sajous had been deprived of procedural due process after having been detained for nine months in a New Jersey prison facility without an individualized bond hearing. *Id.* at *9-12. Of note, Judge Nathan identified five factors to consider in determining whether immigration detention without a bond hearing violates due process: (i) the length of time the alien has been detained; (ii) whether the alien is responsible for the delay; (iii) whether the alien has asserted defenses to removal; (iv) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (v) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *Id.* at *10-11.

In *Hernandez* v. *Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *8-10 (S.D.N.Y. July 25, 2018), Judge Carter applied the factors Judge Nathan recited in *Sajous.* Judge Carter noted that, as the detainee's immigration case was not even yet in appeals, "[h]is case — and detention — could continue for a significant additional period of time," due not only to "backlogs and the new

videoconferencing procedures at the Varick Street court," but also "in light of the extensive evidence and argument that [the detainee] has every right to present." *Id.* at *8. He further considered "some evidence of government delay," citing the fact that it had taken over a month for the detainee's initial immigration appearance to occur, and when the detainee appeared for his merits hearing before the IJ, the IJ was not ready and adjourned the matter for nearly two months. *Id.* at *10. Ultimately, Judge Carter held that prolonged mandatory detention without a bond hearing under § 1226(c) violated the Due Process Clause both on an individual-factor test or under a bright-line rule, explaining that the petitioner's nine-month "detention without a bond hearing has become unreasonably prolonged, whether the Court applies a bright-line rule or conducts an as-applied reasonableness analysis." *Id.* at *6.

Courts in this District have now "overwhelmingly adopted" the *Sajous* five-factor approach. *See Dukuray* v. *Decker*, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *3-4 (S.D.N.Y. Oct. 25, 2018); *see also Cabral* v. *Decker*, 331 F. Supp. 3d 255, 260-63 (S.D.N.Y. 2018); *Brissett* v. *Decker*, 324 F. Supp. 3d 444, 451-53 (S.D.N.Y. 2018); *Darko* v. *Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018); *Lett* v. *Decker*, 346 F. Supp. 3d 379, 387-88 (S.D.N.Y. 2018); *Sanchez* v. *Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 7047328, at *4 (S.D.N.Y. Dec. 23, 2019); *Fortune* v. *Decker*, No. 19 Civ. 9740 (AT), 2019 WL 6170737, at *3-4 (S.D.N.Y. Nov. 20, 2019); *Cruz* v. *Decker*, No. 18 Civ. 9948 (GBD) (OTW), 2019 WL 7572975, at *4-7 (S.D.N.Y. Aug. 27, 2019); *Arce-Ipanaque* v. *Decker*, No. 19 Civ. 1076 (JMF), 2019 WL 2136727, at *1-3 (S.D.N.Y. May 15, 2019); *Gomes*

*Herbert* v. *Decker*, No. 19 Civ. 760 (JPO), 2019 WL 1434272, *2-4 (S.D.N.Y. Apr. 1, 2019); *Joseph* v. *Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *10-13 (S.D.N.Y. Nov. 21, 2018); *Linares Martinez* v. *Decker*, No. 18 Civ. 6527 (JMF), 2018 WL 5023946, at *3-4 (S.D.N.Y. Oct. 17, 2018); *Perez* v. *Decker*, No. 18 Civ. 5279 (VEC), 2018 WL 3991497, at *4-6 (S.D.N.Y. Aug. 20, 2018); *Vallejo* v. *Decker*, No. 18 Civ. 5649 (JMF), 2018 WL 3738947, at *3-6 (S.D.N.Y. Aug. 7, 2018). This Court agrees with *Sajous* and its adherents, holding similarly that whether mandatory detention under § 1226(c) has become "unreasonable," *Demore*, 538 U.S. at 532 (Kennedy, J., concurring), and thus a due process violation, must be decided using an as-applied, fact-based analysis.

## C. Reid's Detention for More Than One Year Without a Bond Hearing Is Unconstitutional

Applying such an individualized, fact-based approach, the Court concludes that Reid's detention here without an individualized bond hearing violates due process.

### 1. The Length of Reid's Detention

When determining the reasonableness of a noncitizen's continued detention under § 1226(c), "[t]he first, and most important, factor … is the length of time the alien has already been detained." *Sajous*, 2018 WL 2357266, at *10. Courts in this District have largely agreed that detention without an individualized bond hearing for "longer than six months is more likely to be 'unreasonable,' and thus contrary to due process, than detention of less than six months." *Sajous*, 2018 WL 2357266, at *10 (granting petition after eight

months' detention); *see, e.g., Araujo-Cortes* v. *Shanahan*, 35 F. Supp. 3d 533, 548-49 (S.D.N.Y. 2014) (granting petition after six months' detention); *Cabral*, 331 F. Supp. 3d at 261 (seven months); *Gomes Herbert*, 2019 WL 1434272, at *2 (eight months); *Hernandez*, 2018 WL 3579108, at *8 (nine months); *Perez*, 2018 WL 3991497, at *5 (nine months); *Dukuray*, 2018 WL 5292130, at *4 (ten months).

Reid's detention exceeds the detentions in those cases. Indeed, Reid has spent over a year in immigration detention. He was arrested by ICE on August 16, 2018, and placed in civil immigration detention at a county jail. Reid was turned over to local authorities in New York County due to his pending criminal case on November 26, 2018, but then was transferred back to ICE detention on approximately April 29, 2019, where he has remained ever since. Accordingly, Reid spent approximately three months in immigration detention before being transferred to criminal custody and has spent approximately ten months in immigration custody since being transferred back. Furthermore, Reid's detention is likely to continue for a significant amount of time, as his case is up on appeal to the BIA. Thus, this factor weighs in favor of granting Reid a bond hearing.

## 2. Whether Reid Is Responsible for the Delay

Under *Sajous*, the second factor courts consider is whether the alien is responsible for the delay. 2018 WL 2357266, at *10. If the alien has requested several continuances or otherwise delayed immigration proceedings, it is less likely that the length of his detention could be deemed unreasonable. *Id.*

Aliens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute. *Id.* On the other hand, if immigration officials have caused delay, it weighs in favor of finding continued detention to be unreasonable. *Id.*

In Reid's case, delays have been caused by both sides. Reid had a change of counsel in the summer of 2019 that caused some delays in his proceedings. Reid's immigration proceedings have also been slowed down due to issues concerning his competency. On the other hand, some of the delay is attributable to the Government's failure to provide Reid's counsel a full copy of his Freedom of Information Act ("FOIA") file in the time required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). What is more, it was the Government that requested, at Reid's merits hearing on November 22, 2019, to submit a written closing argument, rather than doing an oral closing. (Dkt. #22). Reid's counsel objected to a continuance for a written closing, but the IJ permitted it. (*Id.*). The Government also indicated that, in its written summation, it would raise an eligibility issue that it had not previously raised. (*Id.*).

In sum, the Court concludes that delays in adjudicating Reid's immigration case are attributable to both sides. But the delays have not been unwarranted. Reid's immigration case obviously poses unusual complexities, as it has been litigated for over 25 years. That Reid's lawyers and the Government attorneys would need time to familiarize themselves with the complex record and legal issues posed by this case is unsurprising. More importantly, it is clear to the Court that the delays have not been the product

of Reid "gaming the system to delay [his] removal."  *Sajous*, 2018 WL 2357266, at *10.

### 3.     Reid's Defenses to Removal

In *Sajous*, the court held that whether the detained alien has asserted defenses to removal would be pertinent to the due process analysis.  *Sajous*, 2018 WL 2357266, at *11.  The court explained that if an alien has not asserted any grounds on which his removal may be cancelled, he will presumably be removed from the United States eventually and detaining him will always at least marginally serve the ultimate purpose behind the detention.  *Id.*

It is true that Reid has already lost his battle before the IJ.  But Reid has filed an appeal with the BIA and his order of removal is, therefore, not yet final.  As the Court noted above, Reid's 25-year immigration case has been unusually complex.  The Third Circuit has, at least once before, reversed the IJ's and BIA's decisions ordering Reid removed.  *See Reid*, 177 F. App'x 216.  Accordingly, without passing on the ultimate merits of Reid's immigration case, the Court notes that the issues he has raised with respect to his § 212(c) application are not frivolous.

### 4.     Reid's Time in Prison for the Crime That Rendered Him Removable

The next factor courts in this District consider is whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable.  *Sajous*, 2018 WL 2357266, at *11.

The Court notes that Reid has been convicted of three crimes since 1995. However, whether the first and second of these could serve as bases for his removal has been the source of much dispute in Reid's immigration proceedings. The offense that serves as the basis for Reid's current round of proceedings is his 2019 conviction for criminal possession of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1). (*See* 2020 IJ Decision 3). Reid served approximately six months for this offense. Reid's immigration custody has been more than twice as long.

### 5. The Difference Between Reid's Current Facility and a Penal Institution for Criminal Detention

The final factor courts consider is whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention. *Sajous*, 2018 WL 2357266, at *11. This factor weighs in favor of granting Reid the bail hearing he seeks.

Reid is confined in the Hudson County Correctional Facility, which is the same jail at issue in *Sajous*. *Sajous*, 2018 WL 2357266, at *11; *see also Hernandez*, 2018 WL 3579108, at *10 (granting bond hearing where petitioner was detained in a "penal institution" where he was "subject to 'identical' conditions as individuals held in criminal custody"); *Lett*, 346 F. Supp. 3d at 388 (granting hearing where asylum seeker was "detained in a county jail that is used for criminal detention"). The Hudson County Correctional Facility is not meaningfully different from a penal institution, as it is in fact a penal institution.

All these factors, taken together, demonstrate that Reid's continued detention without a bond hearing is unreasonable and unconstitutional. *See Sajous*, 2018 WL 2357266, at *12. The Court next considers the procedural protections Reid seeks at his requested bond hearing.

**D.      The Procedural Requirements of Reid's Bond Hearing**

The Petition asks the Court to require that Reid be afforded certain procedural protections at any bond hearing that the Court orders. Specifically, Reid asks that: (i) he be produced in person for the bond hearing; (ii) the Government bear the burden of proof of establishing by clear and convincing evidence that Reid poses a flight risk or future danger to the public; (iii) the adjudicator not give undue weight to the allegations underlying dismissed criminal charges; and (iv) the adjudicator be required to consider alternatives to imprisonment, such as release on recognizance, parole, or electronic monitoring, and to meaningfully consider Reid's ability to pay if setting a monetary bond. (Pet. ¶ 53). Respondents oppose all four requests.

The Government opposes Reid's first request — that he be present at his bond hearing — on the grounds that ICE has already informed the United States Attorney's Office that it would voluntarily produce Reid in person given the IJ's concerns about his competency and the safeguards she implemented for Reid's merits hearing. (Gov't Br. 29). The Court agrees that it need not order as much. The Court leaves it to the IJ, who has experience in this regard, to determine how best to implement procedural safeguards at the bond hearing.

The Court grants Reid's second request and orders the Government to bear the burden of proving by clear and convincing evidence that Reid poses a flight risk or danger to the public to justify his continued detention. This accords with the "overwhelming majority" of courts, which "have concluded post-*Jennings*, that when unreviewed detention has become unreasonable, the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainee's fundamental liberty interests." *Joseph*, 2018 WL 6075067, at *12; *see also Velasco Lopez* v. *Decker*, No. 19 Civ. 2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("While *Lora* is no longer binding authority, every court to have considered the constitutional issue presented in this case has agreed with its persuasive logic — under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)." (citing *Darko*, 342 F. Supp. 3d at 436; *Linares*, 2018 WL 5023946, at *2)); *Constant* v. *Barr,* 409 F. Supp. 3d 159, 172 (W.D.N.Y. 2019) ("The vast majority of courts in this Circuit to have considered this issue have found 'that imposing a clear and convincing standard would be most consistent with due process.'" (quoting *Hernandez*, 2018 WL 3579108, at *11)).

On the other hand, the Court denies Reid's third request: directing the IJ not to give undue weight to the allegations underlying the dismissed charges. The decision of whether and to what extent to accord weight to evidence lies within the sound discretion of the IJ. Moreover, the Second Circuit has made clear that in granting or denying discretionary relief, IJs may consider the

conduct underlying criminal charges, even if the charges did not result in a conviction. *See, e.g., Wallace* v. *Gonzales*, 463 F.3d 135, 139 (2d Cir. 2006) (per curiam) (declining "to prevent an IJ or BIA from considering an applicant's anti-social conduct — whether leading to a conviction, a Youthful Offender Adjudication, or no legal judgment whatsoever — as an adverse factor in evaluating an application for discretionary relief"). Further, the regulations governing an IJ's granting of a bond to an immigrant detainee provide that: "The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or [ICE]." 8 C.F.R. § 1003.19(d); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) ("Immigration Judges are not limited to considering *only* criminal convictions in assessing whether an alien is a danger to the community." (emphasis in original)). Indeed, Reid does not defend this request in his reply brief.

Finally, with respect to Reid's fourth request, the Court agrees with Reid that the IJ should consider certain options short of detention that may ensure the safety of the community and Reid's appearance in court. The Court agrees with its sister courts that have concluded that due process requires the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Gomes Herbert*, 2019 WL 1434272, at *4 ("[T]he IJ must consider ability to pay and alternative conditions of release in setting bond." (internal quotation marks omitted)); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires that an IJ consider ability to pay and alternative conditions of

release in setting bond." (quotation and alteration omitted)); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (agreeing with petitioner that "the hearing must include a consideration of his ability to pay bond and suitability for alternative conditions of release, to avoid incarceration based on poverty" (internal quotation marks omitted)), *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate.").[4]

Accordingly, the following conditions must be in place at Reid's individualized bond hearing: (i) the Government must carry the burden of proof to establish by clear and convincing evidence that Reid poses a flight risk or a future danger to the public; (ii) the IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring; and (iii) the IJ must meaningfully consider Reid's ability to pay if a monetary bond is set. *See Sophia* v. *Decker*, 19 Civ. 9599 (LGS), 2020 WL 764279, at *5 (S.D.N.Y. Feb. 14, 2020).

### E. Reid's Application for a Court Order Releasing Him Is Denied

On January 28, 2020, Reid supplemented his Petition with a letter motion requesting that the Court release him pursuant to its inherent authority under *Mapp* v. *Reno*, 241 F.3d 221 (2d Cir. 2001). (Dkt. #23). The

---

[4]     *Accord Constant* v. *Barr*, 409 F. Supp. 3d 159, 172 (W.D.N.Y. 2019); *Abdi* v. *Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez* v. *Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) ("A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests.").

letter motion explained that since the filing of the Petition, the health of Reid's fiancée (who is the mother of his 10-year old daughter) had greatly deteriorated. (*Id.*). It also explained that Reid's own health has declined as a result of his schizophrenia and separation from his dying fiancée and young child. (*Id.*). On February 28, 2020, Reid submitted an additional letter to the Court explaining that his fiancée had passed away and arguing that immediate relief continues to be warranted. (Dkt. #28).

Reid argues that the Court has authority to grant Reid's immediate release under *Mapp*, a case in which the Second Circuit held that federal courts have inherent authority to release habeas petitioners on bail. 241 F.3d at 224. The Government disputes that the Court has authority to release Reid, arguing that in *Mapp*, the petitioner was not subject to mandatory detention under § 1226(c), but was instead detained pursuant to 8 U.S.C. § 1231, under which detention is mandatory only for an initial period of 90 days, and discretionary thereafter. (Dkt. #24 at 4-7). The Government argues that this difference in statutes was crucial to the Second Circuit's decision: Because *Mapp* was not subject to mandatory detention, the district court's authority was not limited by a specific statutory provision, and thus it retained the authority to grant bail pending the habeas proceeding. (*Id.*). The Government contends that because § 1226(c) provides for mandatory detention, the circumstances in *Mapp* that gave rise to the district court's power to release an alien on bond are inapposite. (*Id.*).

Even if it had such authority under *Mapp*, the Court would first have to inquire into whether Reid raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective. *See* 241 F.3d at 230. The standard is "a difficult one to meet," *id.* at 226, and it is not met here.

The Court is truly sympathetic to Reid's situation. However, particularly in light of the fact that the Court is granting the relief sought in Reid's Petition, Reid has not established the existence of extraordinary circumstances that make the grant of bail necessary to make the habeas remedy effective. *See Lopez* v. *Sessions*, No. 18 Civ. 4198 (RWS), 2018 WL 2932726 (S.D.N.Y. June 12, 2018); *Fernandez Aguirre* v. *Barr*, No. 19 Civ. 7048 (VEC), 2019 WL 3889800, at *4 (S.D.N.Y. Aug. 19, 2019) ("Because the Petition seeks only a constitutionally-adequate bond hearing ... and because the Court has granted that relief, immediate release is not necessary to make the habeas writ effective.").

**CONCLUSION**

For the reasons stated above, Reid's Petition for a Writ of Habeas Corpus is GRANTED. Within **fourteen days** of the date of this Opinion and Order, Respondents shall either provide Reid with an individualized bond hearing consistent with this Opinion and Order or release him. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated:     March 2, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge